**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ) | |
| SIRIUS FEDERAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 22-cv-00223-LKG |
| v. ) | |
| ) | Dated:  February 24, 2023 |
| MICHAEL JELEN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.    INTRODUCTION

In this civil action, Plaintiff, Sirius Federal, LLC, ("Sirius") brings breach of contract, tortuous interference, breach of fiduciary duty, misappropriation of trade secrets, unfair competition and civil conspiracy claims against Red River Technology, LLC ("Red River") and three of its former employees, Michael Jelen, Paul Czetwertynski and Carolyn Ray (the "Former Employees").  *See generally* ECF No. 1.  Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21.  This motion is fully briefed.  *See* ECF No. 21; ECF No. 22; ECF No. 23; ECF No. 26.  No hearing is necessary to resolve this motion. See L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Defendants' motion to dismiss and (2) **DISMISSES** Counts III, VII and VIII of the complaint.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.     **Factual Background**

In this civil action, Sirius Federal, LLC alleges that its Former Employees, Defendants, Paul Czetwertynski, Michael Jelen and Carolyn Ray, breached certain restrictive covenants by coordinating with its direct competitor, Defendant Red River, to misappropriate Sirius's trade secrets and other confidential information, and to misuse that information to usurp business from Sirius.  ECF No. 1.  Sirius also alleges that Red River has engaged in unfair competition, by soliciting and hiring Sirius's employees, thereby tortiously interfering with their post-employment obligations.  *See id.*  And so, Sirius asserts claims in this case for: (1) breach of contract against the Former Employees for violating their employment agreements with Sirius (Count I); (2) tortious interference against Red River for procuring the Former Employees' breach of their employment agreements with Sirius (Count II); (3) tortious interference with Sirius's prospective economic advantage against all Defendants (Count III); (4) breach of fiduciary duty against Czetwertynski for breaching his duty to act with the utmost good faith and loyalty towards Sirius (Count IV); (5) misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 against all Defendants (Count V); (6) misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act against all Defendants (Count VI); (7) unfair competition against all Defendants (Count VII); and (8) civil conspiracy against all Defendants (Count VIII).  *See id.* at ¶¶ 103-162.

<u>Sirius And Red River</u>

As background, Sirius is a federal contractor that specializes in national information technology ("IT") solutions.  *Id.* at ¶ 17.  Sirius offers IT services and products either directly to the Federal Government as a prime contractor, or as a subcontractor to manufacturers and federal system integrators.  *Id.* at ¶ 19.

Sirius sources the majority of its IT products and services from Cisco Systems, Inc. ("Cisco").  *Id.* at ¶ 20.  In this regard, Sirius alleges in the complaint that it has spent 26 years building a business relationship between Cisco and the Federal Government.  *Id.* at ¶ 20.  Sirius

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint and Defendants' motion to dismiss and memorandum in support thereof.  ECF Nos. 1, 21 and 21-1.

also alleges that the United States Navy (the "Navy") has been its customer for more than 26 years. *Id.* at ¶ 26. In addition, Sirius alleges that it has developed and relied upon trade secrets and other confidential and proprietary information related to its business.[2] *Id.* at ¶ 33. And so, Sirius further alleges that this confidential and proprietary information affords it a competitive advantage over other companies that provide IT solutions to the Federal Government. *Id.* at ¶¶ 37-38.

Defendant Red River is a New Hampshire limited liability technology transformation company. *Id.* at ¶ 11; *see also* www.redriver.com. Red River is a direct competitor of Sirius. ECF No. 1 at ¶¶ 1, 82.

<u>The Former Employees</u>

Defendant Paul Czetwertynski began his employment with Sirius as a senior account manager on October 20, 2021. *Id.* at ¶ 42. Sirius alleges that Mr. Czetwertynski: (1) received the company's confidential information; (2) learned its government contracting business practices; (3) learned its engineering abilities and go-to market strategies; (4) was involved in strategic development initiatives; and (5) conducted sales and project coordination for its partners and customers. *Id.* at ¶¶ 42-43. Prior to joining Sirius, Mr. Czetwertynski worked for Cisco as an account manager for Cisco's Navy account for eight years. *Id.* at ¶ 40.

Defendant Michael Jelen began his employment with Sirius in March of 2013, and he served as an account executive for Sirius Federal's Army/Navy West account until January 2014. *Id.* at ¶ 45. For the next three years, Mr. Jelen served as the account manager for Sirius's Special Intelligence–Department of Defense accounts. *Id.* at ¶ 46. In December 2021, Mr. Jelen was promoted to the position of senior account manager for Sirius's Navy account. *Id.* at ¶ 47. Sirius alleges that Mr. Jelen had access to, developed and utilized its confidential information, including: (1) customer identity and key decision maker contact information; (2) historical and current partner and customer orders and requirements; (3) high performing and underperforming

---

[2] Sirius alleges that this information includes: (1) identities of key decision makers and critical relationships; (2) designs, prototypes, programs, operational and service requirements, current and historical proposals, bids and quotes and contract terms; (3) pricing and projections, including data related to pricing factors, sales strategies and profit margins; (4) financial and performance data and analysis; and (5) information related to billing, booking, deployment, deliveries, support, maintenance and tracking. ECF No. 1 at ¶ 34.

products, services and programs; (4) partner and customer financial information and analysis related to same; (5) historical pricing and profit margins associated with various products, services and programs, including for the Navy account; and (6) preferred partner and customer information and terms. *See id.* at ¶¶ 48-49, 51.  Sirius also alleges that Mr. Jelen was involved in strategic development initiatives for its partners and customers, and that he developed relationships with key decision-makers for the Navy and Sirius's strategic partners. *Id.* at ¶ 50.

Defendant Carolyn Ray began her employment with Sirius in January 2003, and she served as a senior account executive until February 2012. *Id.* at ¶ 55.  Thereafter, Ms. Ray served as an inside sales manager for Sirius's Department of Defense account until April 2016, and then as the senior account executive for Sirius Federal's SI–DOD account. *Id.* at ¶ 55. Sirius alleges that Ms. Ray received and utilized its confidential information, including: (1) customer identity and key decision maker contact information; (2) historical and current partner and customer orders and requirements; (3) high performing and underperforming products, services and programs; (4) partner and customer financial information and analysis related to same; (5) historical pricing and profit margins associated with various products, services and programs, including for the DOD and Navy accounts; and (6) preferred partner and customer information and terms. *See id.* at ¶¶ 56-60.  Sirius also alleges Ms. Ray developed relationships with key decision-makers for DOD, the Navy and Sirius's strategic partners. *Id.* at ¶¶ 56, 58.

<u>The Employment Agreements</u>

On October 6, 2021, Mr. Czetwertynski executed a Confidentiality and Non-Solicitation Agreement (the "Czetwertynski Agreement") in connection with his employment with Sirius. *Id.* at ¶ 65.  Section 1 of the "Czetwertynski Agreement addresses confidentiality and provides, in relevant part, that:

> Employee will be provided Sirius Federal's Confidential Information during the course of Employee's employment.  Employee agrees that without the use of Sirius Federal's Confidential Information, Employee will not be able to perform Employee's job duties. In order to avoid any inadvertent or other disclosure of Sirius Federal's Confidential Information, Employee agrees that when Employee's employment with Sirius Federal ends or whenever requested by Sirius Federal, Employee will immediately return any and all Confidential Information of Sirius Federal's in Employee's possession or control, irrespective of the form in which the information is held or maintained . . . Additionally, Employee agrees to keep secret all Confidential Information of Sirius Federal, and not to disclose this

4

information to anyone outside of Sirius Federal including, without limitation, disclosing this information to any customer, account, vendor, or competitor. Employee will only use Employee's knowledge of Sirius Federal's Confidential Information in the ordinary course of Employee's job duties and Employee will not disclose this information to anyone internally who does not have a need to know, nor will Employee disclose it to any person after Employee's employment ends.[3]

ECF No. 1-2 at 2.  Section 2 of the Czetwertynski Agreement addresses protection of customer relations and provides, in relevant part, that:

For a period of one (1) year after ceasing to be employed by Sirius Federal, regardless of whether Employee's employment ends voluntarily or involuntarily, Employee shall not, directly or indirectly, as an employee or independent contractor, alone or in association with, on behalf of, or for the benefit of any third party, provide or solicit to provide any service or product to any of Sirius Federal's customers, which service or product is similar to or competitive with any service or product offered by Sirius Federal, or the provision of which could adversely affect Sirius Federal's business relationship with such customer.

*Id.*

Lastly, Section 3 of the Czetwertynski Agreement addresses non-solicitation of employees and provides, in relevant part, that:

During Employee's employment with Sirius Federal, and for a period of one (1) year hereafter (regardless of whether Employee's employment ends voluntarily or involuntarily), Employee will not directly or indirectly contact for the purpose of soliciting employment, solicit, employ or otherwise engage any of the employees of Sirius Federal or any of its respective subsidiaries, affiliates or successors to leave his or her employment to work for any business, individual, company, firm, corporation, or other entity in competition with the business of Sirius Federal or any subsidiary, affiliate or successor of Sirius Federal . . . .

*Id.* at 3.

---

[3] The Czetwertynski Agreement defines "Confidential Information" as: customer lists, lists of individual names, post office and e-mail addresses, telephone and telecopy numbers, and other pertinent contact information relating to customers or potential customers; customer files and network information; internal or customer computer configurations; customer buying needs or habits; customer payment practices or histories; lists of contact information; vendor lists and vendor pricing and cost information; implementation methodologies; marketing plans and strategies; transactional terms and conditions; equipment costing; internal financial information; training and training programs; billing practices; compensation plans; plans for future developments; and any information of any kind that is not known generally within Sirius Federal's industry, or any other internal Sirius Federal documentation that is a trade secret, proprietary or confidential.  ECF No. 1-2 at 2.

Sirius alleges that the Czetwertynski Agreement prohibits Mr. Czetwertynski from, among other things, providing, or soliciting to provide, any service or product to any of Sirius's customers, to the extent such service or product is similar to or competitive with any service or product offered by Sirius. *See* ECF No. 1 at ¶ 66.  Sirius also alleges that the Czetwertynski Agreement prohibits Mr. Czetwertynski from, among other things, soliciting any of Sirius's employees to leave his or her employment to work for any competitor of Sirius during his employment with Sirius and for one year thereafter. *See id.* at ¶ 68.  In addition, Sirius contends that the Czetwertynski Agreement requires that Mr. Czetwertynski preserve and maintain the confidential information that he obtained during his employment with Sirius. *Id.* at ¶ 69.

On March 18, 2013, Defendant Michael Jelen executed an Assignment of Inventions, Non-disclosure, Non-solicitation, and Non-competition Agreement (the "Jelen Agreement") in connection with his employment with Sirius. *Id.* at ¶ 70.  On January 4, 2010, Defendant Carolyn Ray executed an identical Assignment of Inventions, Non-disclosure, Non-solicitation, and Non-competition Agreement (the "Ray Agreement") in connection with her employment with Sirius (the Jelen Agreement and the Ray Agreement, collectively, the "Non-competition Agreement"). *Id.*

Section 6 of the Non-competition Agreement addresses confidentiality obligations and provides, in relevant part, that:

> I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to me by the Company that relates to the business of the Company or to any parent, subsidiary, affiliate, customer, consultant or supplier of the Company or any other party with whom the Company or any other party with whom the Company agrees to hold such information (including any and all copies thereof) of such party in confidence (collectively, the "Confidential Information"), and that the Company has a protectable business interest in its Confidential Information.

ECF No. 1-3 at 4; ECF No. 1-4 at 4.  Section 6.3 of the Non-competition Agreement addresses non-disclosure and provides, in relevant part, that:

> At all times both during and after my employment with Company, I will not, directly or indirectly, on my own behalf or on behalf of any third party, use, rely on, disclose, make available, or transfer any of the Confidential Information other than as authorized by Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company. I understand that

6

I am not allowed to sell, license or otherwise exploit any products (including software or content in any form) which embody or otherwise exploit in whole or in part any Confidential Information . . . I will take all reasonable precautions to prevent the inadvertent or accidental exposure of Confidential Information . . . I will not remove any Confidential Information from Company's premises or make copies of such materials except for use in Company's business . . . I will return promptly to Company all Confidential Information and copies thereof at any time upon the request of Company, in any event and without such request, prior to the termination of my employment by Company. I agree not to retain any tangible or intangible copies of any Confidential Information after the termination of my employment for any reason. Upon termination of my employment, I will not take with me any documents or materials or copies thereof containing any Confidential Information.

ECF No. 1-3 at 6; ECF No. 1-4 at 6.

Lastly, Section 7 of the Non-competition Agreement addresses non-competition and provides, in relevant part, that:

As a material inducement to Company to enter into this Agreement, I covenant and agree that without the Company's prior written consent, during my employment with Company and for a period of one (1) year following the termination of my employment, whether such termination be with or without cause, I shall not engage during such period, directly or indirectly, voluntarily or involuntarily, as principal, agent, officer, employee or otherwise, anywhere in the United States, in any actions to divert or take away any customer or supplier of Company; seek to reduce the amount of business performed or engaged in by the Company with any customer or supplier; contact, solicit, or conduct business with any existing customer of the Company or any prospect, potential customer, or contract opportunity pursued by the Company within one (1) year immediately preceding my termination of employment or disclosed to me during my employment with the Company; or use, directly or indirectly, the above described Confidential Information for any purposes other than for the benefit of the Company.

ECF No. 1-3 at 7-8; ECF No. 1-4 at 7-8.[4]

Sirius alleges that the Non-competition Agreement prohibits Mr. Jelen and Ms. Ray from: (1) taking any actions to divert or take away any customer or supplier of Sirius; (2) seeking to reduce the amount of business performed or engaged in by Sirius with any customer or supplier;

---

[4] Defendant Carolyn Ray also executed an employee Non-disclosure Agreement (the "Non-disclosure Agreement") in connection with her employment with Sirius, which include, covenants not to hire employees and not to compete.  ECF No. 1-5.

.

(3) contacting, soliciting, or conducting business with any existing or prospective customer of Sirius within one year immediately preceding the termination of their employment; (4) inducing or attempting to induce any employee of Sirius to quit employment with the company, both during their employment and for one year thereafter; (5) interfering with or disrupting Sirius's relationship with its employees, both during their employment and for one year thereafter; (6) soliciting, enticing, or hiring away any employee of Sirius; and (7) hiring or engaging any employee of Sirius, or any former employee whose employment with the company ceased less than one year before the date of such hiring or engagement.  ECF No. 1 at ¶¶ 71-72.  Sirius also alleges that the Non-competition Agreement requires that Mr. Jelen and Ms. Ray hold in strict confidence and preserve Sirius's confidential information.  *Id.*

The Resignation Of The Former Employees

On December 1, 2021, the Former Employees notified Sirius of their intent to resign their respective positions with the company.  *Id.* at ¶ 78.  Sirius alleges that Red River solicited and induced the Former Employees to leave Sirius for Red River.  *Id.* at ¶ 3.

Sirius also alleges that the Former Employees solicited its strategic partners and customers on behalf of Red River.  *See id.* at ¶¶ 83-84.  In addition, Sirius alleges that Mr. Czetwertynski took his knowledge of confidential information obtained during his employment with Sirius to Red River, where he is using that knowledge to develop Sirius's designs and prototypes for Red River.  *Id.* at ¶ 85.

Lastly, Sirius alleges that it lost two bids for government contracts, due to Defendants' conduct.  *Id.* at ¶¶ 97-100.  And so, Sirius seeks certain injunctive relief and to recover monetary damages from Defendants.  *Id*. at Prayer for Relief.

**B.  Procedural Background**

Sirius commenced this civil action on January 28, 2022.  ECF No. 1.  On May 25, 2022, Defendants filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof.  ECF No. 21.

On June 10, 2022, Sirius filed a response in opposition to Defendants' motion.  ECF No. 22.  On June 27, 2022, Defendants filed their reply.  ECF No. 23.  On July 28, 2022, Sirius filed a sur-reply by leave of the Court.  ECF No. 26.

Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B.  Breach Of Contract

Under Maryland law, the elements of a breach of contract claim include: (1) a contractual obligation and (2) a material breach of that obligation. *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at \*10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)).  And so, Plaintiff must plead that there existed a "contractual obligation, breach, and damages" to state a plausible breach of contract claim. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at \*8 (D. Md. Mar. 23, 2018) (citations omitted).

### C.  Tortious Interference With Contractual Or Business Relations

This Court has recognized that "[t]he tort of intentional interference with contractual or business relations is 'well-established in Maryland.'"  *State Farm Mut. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)).  This tort provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby."  *United Rental Equip. Co. v. Potts & Callahan Contracting Co.*, 191 A.2d 570, 574 (Md. 1963).

To prove a claim for intentional interference with contractual or business relations, a plaintiff must show the following elements: "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."  *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)).  Maryland Courts have recognized that such tortious interference has "two general manifestations."  *Macklin*, 639 A.2d at 117.  First, the interference either induces the breach of an existing contract, or the interference maliciously or wrongfully interferes with economic relationships in the absence of a breach of contract.  *Blondell*, 991 A.2d at 97 (citation omitted).  Examples of the second manifestation of this tort include, "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith."  *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994) (quotation omitted).

"An essential element of a tortious interference claim is a showing that the actions undertaken were 'wrongful.'"  *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 541 (D. Md. 2006) (quoting *Martello v. Blue Cross & Blue Shield of Md., Inc.*, 795 A.2d 185, 194 (Md. Ct. Spec. App. 2002)).  In this regard, "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships."  *Id.* (quoting *Carter v. Aramark Sports & Entm't Servs.*, 835 A.2d 262, 279 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)).  In addition, to sustain a claim for tortious interference with prospective business relationship, a

plaintiff must "'identify a possible future relationship which is likely to occur, absent the interference, with specificity.'"  *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. 2013) (quoting *Baron Fin. Corp.*, 471 F. Supp. 2d at 546 (citing Maryland law)); *see also Press v. United States*, No. 17-1667, 2018 WL 1211537, at *9 (D. Md. Mar. 8, 2018) (quoting *Baron Fin. Corp.*, 471 F. Supp. 2d at 542) ("A plaintiff '*must* establish some evidence that a prospective business relationship is likely to occur.'") (emphasis in original).  A plaintiff must also establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought and that any damages sought are a "natural, proximate and direct effect of the tortious misconduct."  *See Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995); *see also Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970) (stating that "[c]ausation in fact is concerned with the . . . inquiry of whether defendant's conduct actually produced an injury"); *Jones v. Malinowski*, 473 A.2d 429, 435 (Md. 1984).

### D.  Breach Of Fiduciary Duty And Usurpation Of Corporate Opportunity

Under Maryland law, "[t]here is no 'one-size fits all' breach of fiduciary tort that encompasses all types of relationships.  In other words, 'there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries.'"  *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020) (quoting *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997).  But, "to establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'"  *Id.* (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 576 n.22 (D. Md. 2000)).  Specifically, "[i]f a plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach is alleged, a court should permit the count to proceed."  *Id.*  And so, "[t]he cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct."  *Philips N. Am. LLC v. Hayes*, No. CV ELH-20-1409, 2020 WL 5407796, at *13 (D. Md. Sept. 9, 2020) (quoting *Plank*, 231 A.3d at 466).

Lastly, under Maryland law, the doctrine of usurpation of corporate opportunity provides that an officer or director may not take for himself any opportunity if "the corporation could realistically expect to seize it and develop the opportunity," irrespective of whether he sought out

that opportunity.  *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 625 (D. Md. 2013) (quoting *Shapiro v. Greenfield*, 764 A.2d 270, 278 (Md. 2000)).

### E.  Misappropriation Of Trade Secrets

To prevail on a misappropriation claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), the plaintiff must allege: (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce.  18 U.S.C. § 1836(b)(1).  To prevail upon the claim under the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code (2013 Repl. Vol), § 11-1201 *et seq.* of the Commercial Law Article ("C.L."), a plaintiff must establish that "(1) it possessed a valid trade secret, (2) the defendant acquired its trade secret, and (3) the defendant knew or should have known that the trade secret was acquired by improper means."  *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993) (citing C.L. § 11-1201(c)(1)); *Airfacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018).

The DTSA and the MUTSA define a trade secret in "substantially the same manner." *Md. Physician's Edge, LLC v. Behram*, DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019).  Specifically, a "trade secret" includes all forms and types of financial, business, or economic information if (1) the owner has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to another person in the relevant industry, and not being readily ascertainable through proper means.  *See* 18 U.S.C. § 1839(3); C.L. § 11-1201(e).  To determine whether information is a trade secret, Maryland courts assess: (1) the extent to which the information is known outside of plaintiff's business; (2) the extent to which it is known by employees and others involved in plaintiff's business; (3) the extent of measures taken by plaintiff to guard the secrecy of the information; (4) the value of the information to plaintiff and competitors; (5) the amount, effort, or money expended by plaintiff in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated by others.  *AirFacts*, 909 F.3d at 95 (citing Restatement (First) of Torts § 757 cmt. b); *see also Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020).[5]

---

[5] This Court and the Maryland Court of Appeals have considered the types of information that can constitute a trade secret under the MUTSA on several occasions.  *See, e.g., AirFacts*, 909 F.3d at 96-97

### F. Unfair Competition

Under Maryland law, the common law tort of unfair competition can extend to "'all cases . . . in the field of business.'" *Electronics Store, Inc. v. Cellco Partnership*, 732 A.2d 980, 991 (Md. 1999) (quoting *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943)). Generally, "[u]nfair competition is 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'" *Thompson v. UBS Financial Services, Inc.*, 115 A.3d 125, 133 (Md. 2015) (quoting *Balt. Bedding Corp.*, 34 A.2d at 342) (internal quotation marks omitted). "[U]nfair competition makes an individual liable for a deception that results in 'the goods of one dealer [being] passed off as the goods of another, and the seller receiv[ing] the profit which he would not have received except for such deception.'" *Gorby v. Weiner*, TDC-13-3276, 2014 WL 4825962, at *6 (D. Md. Sept. 23, 2014) (quoting *Edmondson Village Theatre v. Einbinder*, 116 A.2d 377, 380 (Md. 1955)). But, unfair competition is not limited to "passing off" a competitor's wares as one's own. *Delmarva Sash & Door Co. of Md., Inc. v. Anderson Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002) (citing *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.*, 340 A.2d 736, 747 (Md. 1975); *Edmondson Village Theatre*, 208 Md. at 42, 116 A.2d at 379). Given this, this Court has recognized that the Maryland Court of Appeals "has preserved a high degree of flexibility in the law of unfair competition." *Delmarva*, 218 F. Supp. 2d at 733.

> What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception.

*Id.* (quoting *Balt. Bedding Corp.*, 34 A.2d at 342).

---

(deeming as trade secrets, under Maryland law, documents containing information available to all database subscribers that an individual compiled into a more accessible format through "painstaking, expert arrangement"); *Motor City Bagels v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478-79 (D. Md. 1999) (finding that a business plan was a trade secret because it included "personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information"); *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 463-64 (Md. 2004) (deeming pricing information that disclosed an employer's manufacturing costs and profit margins a trade secret because of the "unique, competitive nature of the currency acceptor industry"); *cf. Albert S. Smyth Co. v. Motes*, No. 17-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (deeming as trade secrets, for purposes of a motion to dismiss, documents containing customer lists, pricing sheets, and business strategies).

### G.  Civil Conspiracy

As a final matter, a civil conspiracy under Maryland law is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)).  A plaintiff must prove: (1) an unlawful agreement; (2) the commission of an overt act in furtherance of the agreement; and (3) that as a result, the plaintiff suffered actual injury.  *Id.*  The unlawful agreement is not actionable by itself; rather, the "[t]ort actually lies in the act causing the harm" to the plaintiff.  *Id.*  And so, civil conspiracy is not "capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006) (quoting *Hoffman*, 867 A.2d at 290) (internal citations and quotations omitted).

## IV.   LEGAL ANALYSIS

Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the ground that Sirius fails to a state claim upon which relief can be granted.  *See generally* ECF No. 21.  Specifically, Defendants argue that: (1) Sirius fails to state a plausible claim for breach of contract against the Former Employees, because the Czetwertynski Agreement, Non-competition Agreement and Non-disclosure Agreement are void and unenforceable; (2) Sirius fails to state a plausible tortious interference with an agreement claim against Red River, because this claim is based upon unenforceable employee agreements; (3) Sirius also fails to plausibly allege a claim for tortious interference with prospective economic advantage, because Sirius neither has a reasonable expectation in the award of a government contract, nor alleges any facts to show improper means on the part of the Defendants; (4) Sirius fails to state a claim for breach of fiduciary duty and usurpation of corporate opportunity against Defendant Czetwertynski, because Sirius does not allege any facts to show that Mr. Czetwertynski diverted business away from Sirius; (5) Sirius fails to plausibly allege a misappropriation of trade secrets claim, because Sirius does not allege that Defendants either, acquired its trade secrets by improper means, or unlawfully disclosed those trade secrets; (6) Sirius fails to plausibly allege an unfair competition claim, because the complaint lacks factual allegations to show that Sirius's business was

damaged by Defendants' alleged conduct; and (7) Sirius fails to allege a plausible civil conspiracy claim, because the complaint lacks factual allegations to show the elements of this claim.  ECF No. 21-1 at 7-21.

Sirius counters that: (1) it states a plausible claim for breach of contract in this action, because the commencement of employment is sufficient consideration to enforce the Czetwertynski Agreement and the non-solicitation provisions in the Non-competition Agreement are not overly broad; (2) it alleges sufficient facts to state claims for tortious interference in the complaint, because, among other things, Sirius has a reasonable expectation in future business with the Navy and the complaint alleges facts to show Defendants' wrongful conduct; (3) it alleges a viable breach of fiduciary duty claim against Mr. Czetwertynski, because the complaint alleges that Mr. Czetwertynski usurped at least one business opportunity during his employment with Sirius; (4) it alleges sufficient facts to support a trade secrets claim, because this claim does not rely upon the doctrine of inevitable disclosure; (5) it states a plausible claim for unfair competition, because the complaint contains factual allegations to show that Defendants improperly disclosed Sirius's confidential information and that Sirius suffered damages as a result of this conduct; and (6) it also states a viable civil conspiracy claim, because the complaint alleges sufficient facts to satisfy the elements of this claim.  ECF. No. 22 at 10-31.  And so, Sirius requests that the Court deny Defendants' motion to dismiss.  *Id*. at 32.

For the reasons discussed below, a careful reading of the complaint shows that Sirius has alleged plausible claims for breach of contract, tortious interference with agreements, breach of fiduciary duty and usurpation of corporate opportunity, and misappropriation of trade secrets in this matter.  But, the complaint fails to state plausible claims for tortious interference with prospective economic advantage, unfair competition, and civil conspiracy.  And so, the Court GRANTS-in-PART and DENIES-in-PART Defendants' motion to dismiss and DISMISSES Counts III, VII and VIII of the complaint.  Fed. R. Civ. P. 12(b)(6).

### A.   Sirius States A Plausible Breach Of Contract Claim

As an initial matter, a careful reading of the complaint shows that Sirius states a plausible breach of contract claim against the Former Employees, based upon the Czetwertynski Agreement and the Non-competition Agreement.  Defendants argue that Sirius cannot state a breach of contract claim against Mr. Czetwertynski, because he was employed by Sirius for only

43 days and that this brief time period is not sufficient consideration to support the restrictive covenants in the Czetwertynski Agreement. *See* ECF No. 21-1 at 7-8.

Under Maryland law, the question of whether there is sufficient consideration to enforce a restrictive covenant depends on the "facts and circumstances of each case[.]" *See Pan 4 Am., LLC v. Tito & Tita Food Truck, LLC*, No. DLB-21-401, 2022 WL 622234, at *12 (D. Md. Mar. 3, 2022) (quoting *Simko, Inc. v. Graymar Co.*, 464 A.2d 1104, 1107-08 (Md. 1983)). But, "it is well established that where a restrictive covenant is bargained for in exchange for employment, the employment will be sufficient consideration for such an agreement." *Lofton v. TLC Laser Eye Centers, Inc.*, 2001 WL 121809, at *5 (D. Md. Feb. 8, 2001); *see also Simko*, 464 A.2d at 1108 (noting that if a restrictive covenant is bargained for at the commencement of employment there is consideration for the agreement).

While Defendants correctly observe that Mr. Czetwertynski was employed with Sirius for just 43 days, there is no dispute that Mr. Czetwertynski signed an employment agreement in connection with the commencement of his employment that contains certain restrictive covenants. ECF No. 1 at ¶ 65. Because there is no bright line rule under Maryland law that Mr. Czetwertynski must have been employed for a specific period of time thereafter to enforce these restrictive covenants, the Court declines to dismiss Sirius's breach of contract claim against Mr. Czetwertynski.

Defendants' argument that the Court should dismiss Sirius's breach of contract claims against Defendants Jelen and Ray, because the restrictive covenants in the Non-competition Agreement are overly broad and unenforceable, is also unavailing. ECF No. 21-1 at 8-11. Under Maryland law, a restrictive covenant is enforceable if: (1) the employer has a legally protected interest; (2) the restrictive covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest; (3) the covenant cannot impose an undue hardship on the employee; and (4) the covenant cannot violate public policy. *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158-59 (Md. 1963); *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515–16 (Md. 1990)). A careful reading of the Non-competition Agreement at issue here shows that the restrictive covenants contained therein are narrowly tailored, because they are limited to one year. ECF No. 1-3 at 7-8; ECF No. 1-4 at 7-8. The restrictions in the covenants also prohibit

only the pursuit of prospective customers during 1 year after ending employment. *Id.* Given this, the Court does not read these restrictive covenants to be either wider in scope and duration than is reasonably necessary to protect Sirius's interest, or to impose an undue hardship on the Former Employees. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438. And so, the Court also declines to dismiss Sirius's breach of contract claims against Defendants Jelen and Ray based upon the Non-competition Agreement.

### B. Sirius States A Plausible Breach Of Fiduciary Duty/Usurpation Of Corporate Opportunity Claim

Defendants also argue without persuasion that Sirius fails to state a claim for breach of fiduciary duty/usurpation of corporate opportunity against Mr. Czetwertynski, because the complaint does not allege that Mr. Czetwertynski diverted business away from Sirius. ECF No. 21-1 at 13-14. "To establish a breach of fiduciary duty as an independent cause of action, Sirius must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Plank*, 231 A.3d at 466 (quoting *Froelich*, 96 F. Supp. 2d at 576). And so, if Sirius "describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach is alleged, [the Court] should permit the count to proceed." *Id.*

Here, Count IV of the complaint contains sufficient factual allegations to support each element of Sirius's claim for breach of fiduciary duty/usurpation of corporate opportunity. First, Sirius alleges that, given his prior employment with Sirius, Mr. Czetwertynski owed a fiduciary duty of loyalty to Sirius. ECF No. 1 at ¶ 130. Sirius also alleges Mr. Czetwertynski breached that duty by disclosing, relying upon and misusing Sirius's confidential information. *See id.* at ¶ 135. In addition, Sirius alleges that Mr. Czetwertynski forwarded certain business opportunities to Red River, and therefore, usurped at least one business opportunity from Sirius. *See id.* at ¶¶ 83, 135. Finally, Sirius alleges resulting harm, by alleging that Mr. Czetwertynski's breach of his fiduciary duties caused it to lose bids related to the Navy's CANES program. *See id.* at ¶¶ 136, 137. Because Sirius alleges a plausible claim for breach of fiduciary duty/usurpation of corporate opportunity in the complaint, the Court also declines to dismiss this claim.

### C. Sirius States A Claim For Misappropriation Of Trade Secrets

Defendants similarly argue without persuasion that Sirius's misappropriation of trade secrets claims in Counts V and VI of the complaint should be dismissed, because these claims improperly rely upon the theory of inevitable disclosure. *See* ECF No. 21-1 at 14-17.  To state a claim for misappropriation of a trade secret, under the MUTSA, Sirius must establish that (1) "it possessed a valid trade secret," (2) "the defendant acquired its trade secret," and (3) "the defendant knew or should have known that the trade secret was acquired by improper means[.]" *Trandes*, 996 F.2d at 660.  In addition, to state such a claim under the DTSA, Sirius must allege that: (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce.  18 U.S.C. § 1836(b)(1).

Defendants correctly observe that Maryland courts have rejected the inevitable disclosure theory under both the Defend Trade Secrets Act and the Maryland Uniform Trade Secrets Act. ECF No. 21-1 at 13-14.  But, the Court does not read the allegations in Counts V and VI of the complaint to rely upon this doctrine.

Rather, Sirius has sufficiently alleged facts in the complaint to satisfy each element of a misappropriation of trade secrets claim under the DTSA and the MUTSA.  In the complaint, Sirius alleges that the Former Employees acquired its trade secrets by improper means and that they also used and disclosed those trade secrets to Red River.  ECF No. 1 ¶¶ 40-44, 48-52, 56-61, 65-74, 83-86, 97-102, 144.  Sirius also alleges facts in the complaint to show that Red River acquired its trade secrets from the Former Employees, while knowing that the trade secrets were acquired by improper means.  *Id.* at ¶¶ 7, 84-86, 95.

In addition, Sirius alleges that Defendants subsequently used its trade secrets to gain an unfair hard start to develop designs and prototypes for the Navy.  *Id.* at ¶¶ 97-102.  Sirius also alleges that its trade secrets are related to products and services used in foreign commerce.  *Id.* at ¶ 146.  Because Sirius has alleged facts to show that (1) it possessed valid trade secrets; (2) Defendants acquired its trade secrets; and (3) Defendants knew or should have known that Defendants acquired its trade secrets by improper means, and (4) its trade secrets implicate interstate or foreign commerce, the Court also declines to dismiss Counts V and VI of the complaint.

### D. Sirius States A Plausible Tortious Interference With Agreements Claim

Sirius also states a plausible claim against Red River for tortious interference with the Former Employees' agreements. A claim for tortious interference with contractual or business relations requires the following elements: "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Waypoint Mgmt. Consulting, LLC v. Krone*, No. CV ELH-19-2988, 2022 WL 2528465, at *54 (D. Md. July 6, 2022) (citing *Blondell*, 991 A.2d 80, 97) (citations omitted). The interference must either induce the breach of an existing contract, or must maliciously or wrongfully interfere with economic relationships, in the absence of a breach of contract. *Blondell*, 991 A.2d at 97 (citation omitted).

In Count II of the complaint, Sirius alleges that Red River tortiously interfered with the Former Employees' agreements by, among other things: (1) employing the Former Employees in roles that violate the restrictive covenants in those agreements and (2) allowing the Former Employees to solicit and/or service Sirius's customers and partners with whom the Former Employees worked at Sirius in violation of the Former Employees' employment agreements. *See* ECF No. 1 at ¶¶ 119-20. Because Sirius alleges that Red River induced the Former Employees to breach their employment agreements, Sirius has alleged a plausible tortious interference with agreements claim in the complaint. *Blondell*, 991 A.2d at 97. And so, the Court also declines to dismiss this claim.

### E. Sirius Fails To State A Plausible Tortious Interference With Prospective Economic Advantage Claim

The Court agrees, however, with Defendants that Sirius fails to state a claim for tortious interference with prospective economic advantage in Count III of the complaint. This Count lacks any factual allegations to show independently wrongful conduct on the part of the Defendants that resulted in harm to Sirius's business.

In the absence of a breach of contract, Sirius must allege that the Defendants maliciously or wrongfully interfered with its economic relationships. *See id*. In this regard, the "[w]rongful or malicious interference . . . is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Baron Fin. Corp.*,

471 F. Supp. 2d at 541 (quoting *Carter v. Aramark Sports & Entm't Servs.*, 835 A.2d 262, 279 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)).

In Count III of the complaint, Sirius alleges that the Defendants tortiously interfered with its prospective economic advantage by, among other things: (1) soliciting and inducing its employees to resign and undermining business relationships with its employees; (2) impairing and appropriating Sirius's business with the Navy's Shipboard Programs and Project Thor; and (3) unfairly competing with Sirius. *See* ECF No. 1 at ¶¶ 126-27. Taken as true, these allegations do not show wrongful acts by the Defendants that are *independent* of the alleged harm to Sirius's business.[6] And so, the Court must DISMISS Count III of the complaint.

**F. Sirius Fails To State A Plausible Claim For Unfair Competition**

The Court must also dismiss Count VII of the complaint because Sirius fails to state a plausible claim for unfair competition. Under Maryland law, "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *Delmarva*, 218 F. Supp. 2d at 733 (quoting *Balt. Bedding*, 34 A.2d at 342). Given this, this Court has recognized that the Maryland Court of Appeals has preserved a high degree of flexibility in the law of unfair competition, although the "general principle is that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception." *Id.*

The complaint does not contain facts to show that Sirius's business has been damaged as a result of any "fraud, deceit, trickery or unfair methods of any sort" on the part of the Defendants. *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 891 (4th Cir. 1992) (quoting *Balt. Bedding Corp.*, 34 A.2d at 342). Sirius alleges in Count VII of the complaint that the Former Employees engaged in unfair competition, because they: (1) usurped its corporate opportunities; (2) misappropriated and disclosed its confidential and proprietary information; and (3) used company time and resources to pursue opportunities that were competitive with Sirius. ECF No. 1 at ¶ 156. Sirius also alleges that Red River engaged in unfair competition by

---

[6] While Sirius alleges facts to show misappropriation of its trade secrets and confidential information, breach of fiduciary duty, and unfair competition as separate claims in the complaint, Sirius does not specifically allege this conduct in connection with its claims for tortious interference. *See* ECF No. 1 at ¶¶ 119-20, 126-27.

improperly misusing and disclosing Sirius's confidential information and by tortiously interfering with the post-employment obligations in the Former Employees' employment agreements. *Id.* at ¶ 157. But, the complaint is devoid of facts to show that Defendants engaged in fraud, deceit or trickery to unfairly compete with Sirius. *See generally*, ECF No. 1. Given this, the Court agrees with Defendants that the facts alleged in the complaint are insufficient to state a plausible unfair competition claim. And so, the Court also DISMISSES Count VII of the complaint.

### G. Sirius Fails To State A Plausible Civil Conspiracy Claim

As a final matter, the Court also agrees with Defendants that Sirius fails to allege a plausible civil conspiracy claim in the complaint. ECF No. 21-1 at 19-21. To state a claim for civil conspiracy, Sirius must prove: (1) an unlawful agreement; (2) the commission of an overt act in furtherance of the agreement; and (3) that as a result, Sirius suffered actual injury. *Hoffman*, 867 A.2d at 290 (quoting *Green*, 269 A.2d at 824). A careful reading of the complaint makes clear, however, that Sirius does not allege facts to show an agreement among Defendants to conspire to compete against Sirius. ECF No. 1. at ¶¶ 160-162. Given this, the Court must also DISMISS Count VIII of the complaint.

## V.   CONCLUSION

In sum, a careful reading of the complaint shows that Sirius has alleged plausible claims for breach of contract, tortious interference with agreements, breach of fiduciary duty and usurpation of corporate opportunity and misappropriation of trade secrets in this matter. But, the complaint fails to state plausible claims for tortious interference with prospective economic advantage, unfair competition, and civil conspiracy.

And so, for the foregoing reasons, the Court:

> 1. **GRANTS-in-PART** and **DENIES-in-PART** Defendants' motion to dismiss; and
>
> 2. **DISMISSES** Counts III, VII and VIII of the complaint.

Defendants shall answer, or otherwise respond to, the remaining counts in the complaint, on or before **March 24, 2023**.

Judgment shall be entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge